Case number 163895. Debi McKinney on behalf of herself and all others similarly situated v. Sovereign Management Company LLC. Arguments not to exceed 15 minutes for the plaintiff. Heldman for the plaintiff appellate. May I begin your honor? Yes. Thank you. I am Sam Heldman for the plaintiffs. This is a case under the Worker Adjustment Retraining Notification Act or the WARN Act. To break it down I think we have some simple issues here, a series of simple issues. One, will this court generally adopt what they call the single employer doctrine that's in the regulations and that other courts have adopted that allows multiple corporate entities to be considered together the Now this is an easy question in this case because nobody questioned that. The defendant, Sovereign, didn't question the validity of that doctrine. The district court... Losing the end of your sentences, Sovereign didn't what question? Did not question the validity of that doctrine and they relied on it. Everyone agreed. The joint employer doctrine? Joint employer, single employer, most courts tend to use the shorthand single employer. I don't think it makes much difference which shorthand we use. Shorthand may be different depending on what sort of relationship you're talking about in a given case. For me, first of all, it's not too relevant what Sovereign thinks because Sovereign didn't file a brief. So from our perspective of writing something about what the law means, I'm not sure what to say in that sense. But to me the question isn't joint employer, single employer, it's just employer orders. The words of the statute talk about employers ordering things and how can you say employees of the nursing home were employed by Sovereign? That's what seems funny to me about the case. I understand why it might conceptually seem funny and I think I'm going to draw two parts of the court's question if I understand. Employer and orders. If I can take orders first. This case is a little funny and may be due for a narrow opinion because in this case as Sovereign itself said in an interrogatory answer, page 1244, the decision to close was made by governmental authorities. Nursing homes are horrible nursing homes. And the Sovereign, Sovereign's not doing the ordering. Nor did MCWH, Manorette Washington Courthouse. In a sense, one would say, well the employer didn't order the shutdown. But in the Warren Act sentence, we all know from the regulations at 639.9 that a government ordered shutdown can nonetheless be an act that requires the 60 days notice to the employees. Again, Sovereign admitted that below. But by the employer, not by a consultant. Okay, so now, now we're to the question of employer. Who is the employer? And what does the statute tell us? The employer is the, is any business enterprise that employs people. What does any business enterprise mean? Did the government order them to be closed immediately or say give them 60 days and then close? No, Your What had been going on was from October or even September of 13, the government had said, here's a list of a couple dozen or more deficiencies, some of which are horrible. If you don't get this fixed by January 16th, you're dead. And they didn't get it fixed by January 16th. Well, they cut off their, they cut off the Medicaid and Medicare funding reimbursement, right? Yes. They didn't say, did they also say close? There is in the record a letter of January 15 from a government official that says we are proposing to take away your license to operate the nursing home there. Sovereign throughout has said, and I think there's some, in a practical world sense, it's true. If the funding was cut off, the facility would have to close, period. There were not, you know, not, it wasn't a private pay situation. All they could do was, you know, limp along trying to get the patients out to somewhere else. And they did that over the course of the Let me ask you this. Yes. I realize that we're dealing with a five-factor test that is not on all fours with state piercing or with necessarily other tests. It's just, it's, you know, kind of stands on its own. I think that's what you're arguing, right? Correct. So what is enough? You've got a situation where you've clearly got a management company, a consultant, whatever. Let's go so far as to say that they're managing the business in the interim. What is enough? Is that enough? And if you're saying that that's enough, what do you have to support it? That is enough, Your Honor, in the situation where the two entities you're bringing together as a single employer are not parent subsidiary or sibling corporations. Sometimes that's the question. Here we have a question of two entities contracting with each other. And this court, and I know it's an unpublished opinion in the Ajax case, was dealing with another sort of contracting party's lenders and asked when can lenders be liable as part of the employer under the Warren Act for failing to give notice. And this court, in the unpublished opinion in Ajax, canvassed all the other courts of appeals decisions in that area and said that what it comes down to is essentially whether the lender became so entangled with its borrower that it has assumed responsibility for the overall management of the business. But part of that happens because a lot of these lender relationships, if there's a default, the bank takes over the collateral. And so they become owners. And so you can quite understand how that works. I've never heard of a consulting relationship where the consultant becomes the owner. Doesn't become the owner, Your Honor, but it becomes in a practical sense the operator of the facility. And that was what we have here. As you read Mr. Hurtanu's deposition, he's some absentee guy and this fell into his lap. There was a contract. He used the word contract. So that of course suggests they're independent contractors, but leave that to the side. What does the contract say? Does the contract say sovereign will be taking over day-to-day management of Carlton Nursing Home? There was no written contract, Your Honor, until after the things had gone south and Medicaid funding had been cut off. There was no written contract until then. That written contract, written later, describes them as merely an independent contractor, consultant, blah, blah, blah. But that was written later, and the guy who wrote it, Mr. Marshall of Sovereign, admits in his deposition he insisted that that contract be signed at the bitter end only so he could maybe try to get paid a little bit. Who paid the worker? Who paid the workers was, it was money funded from Mr. Hurtanu, but payroll, payroll work done by a PEO, a professional employee organization called Peoples, which was retained in a contract signed by Mr. Marshall of Sovereign for the facility. But where did the money come from? Mr. Hurtanu. The money came from the nursing home. The money came from Mr. Hurtanu. They would call up Mr. Hurtanu and say we need money. Now what bank account he used? Was he the owner of the nursing home? He had owned the building, and he had incorporated, when the previous operator was going down the tubes, he had incorporated a new entity, Manorette Washington Courthouse, which took over being the nominal operator. So yes, in that sense, a corporation created, an LLC created by Mr. Hurtanu was the nominal operator. But, as Mr. Hurtanu said in his deposition, when asked who was operating this thing, just on a practical day-to-day basis, sovereign. What were they in charge of? Everything. If employees needed to be fired or discharged or disciplined, who was in charge of that? Sovereign. Who was in charge of everything? And yes, Mr. Hurtanu, who was in charge of that? Sovereign. Sovereign. Sovereign. As the district court said, the sovereign's management role was all-encompassing. And I suggest to the court that that is enough. You will never see a case where the entanglement in the business operations, to quote Ajax, was so thorough going. And then, too, you add to this the fact that what we're talking about is essentially a government-driven shutdown, which means that the unlawful act was the failure to give notice. And who was on the scene running things, being in charge of the workforce, the facilities? Who was in charge such that they were also in charge of whether to give notice? On this extreme record in the Ajax test, we think that's sovereign. Who's the law firm that represented sovereign below? I'm sorry, Your Honor. I don't have, well, maybe I do. No, I don't have that. It may have been Dinsmore and Scholl, but I'm not, I don't want to speak out of turn. I will find it if the court will allow it. That's all right. Okay. They were allowed to withdraw after having won summary judgment, and that's how I find myself here alone. Would your position be the same if the nursing home had hired Joe Smith to come in and be a troubleshooter and do it all individually, and he oversaw the hiring and firing of people and make sure the payroll came out? Would he be the one responsible for it? Am I imagining, Your Honor, Joe Smith is himself an employee of the nursing home and he's just some fellow? No, he's just somebody that comes in as a troubleshooter. He's just some fellow. He's coming in to correct the problems. I believe I would make the same argument, Your Honor, if he was acting in such thoroughgoing control over everything. That's usually what a chief executive of a nursing home does, isn't it? I mean, they have a man or a woman who oversees it all and makes sure the payroll's out, hires and fires, but that's the person that you would hold responsible, right? There is usually such a person, yes, Your Honor. In this case, however, the record shows, at least in the light most favorable to us, that the top employee of or at the nursing home was still underneath Sovereign. She would ask Mr. Hurtado, can I hire a new director of nursing? And he'd say, ask Sovereign. But you couldn't make this argument unless Sovereign were a separate entity. Correct. It wouldn't be necessary. Well, no, because then you would be stuck with the nursing home. Correct. Because that would have been the employer. Yes. Do you have anything to say about the FLSA or any of the other statutes that are referred to in the regulation? In terms of how other statutes treat the question of aggregating employers? No, Your Honor, I don't, because I think courts have treated the Warren Act test as a semi-generous thing, perhaps uniquely flexible. I don't know if I'm – Well, I mean, in the – they talk – I mean, the reg – in – after the common period, when this test is explained, it's explained in the context of some other statutes, including the FLSA. I mean, there's an explanation that we're not changing the language, but the intent isn't there to be a special test. We're incorporating some state principles, some FLSA principles. I mean, I'm just wondering if you have anything to add in relation to those statutes. I don't, Your Honor, because I've been thinking more in terms of the 639.382, the adopted thing, rather than that earlier Federal Register comment that I'm not as familiar with as I should be. I'm sorry. Wouldn't you think that – I mean, sometimes you'd think, and it just isn't there, but wouldn't you think that if there could be this type of management company or consulting company liability, that there'd be cases out there that talk about it? I don't know, Your Honor, how many industries there are where it is – where you often have a truly absent owner who just willy-nilly hands over the reins to somebody else. I don't know whether that's a common scenario. By the way, you know, Sovereign, as the record shows, was doing this. Why? Because they wanted to be in line to be the long-term operator of Mr. Hurtado's facility here and other places if they could get in good with him by turning this thing around. And they operated other nursing homes, right? Yes, Your Honor, they did. Just one minute, I'm sorry. I think that the other nursing home that was referred to, they at least – somebody from Sovereign was also an owner of that nursing home, right? I believe that's correct. Did they operate other nursing homes in this situation where they had no ownership interests? I want to say yes, and I'd be glad to follow up with a letter to the court if the court would like, but I can't swear right now. All right, thanks. We're good. Thank you very much. I appreciate your argument. The case will be submitted, and the clerk may call the next case.